UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

NAMON TAYLOR,

           Petitioner,

   v.

GEORGE JAIME,

           Respondent.

Case No. 19-cv-05664-SI

**ORDER DENYING AMENDED PETITION FOR WRIT OF HABEAS CORPUS**

Namon Taylor filed this *pro se* action for a writ of habeas corpus under 28 U.S.C. § 2254 to challenge his conviction from Alameda County Superior Court for two robberies, with the use of a firearm in one of them. The court issued an order to show cause why the amended petition for writ of habeas corpus should not be granted, respondent filed an answer, and Taylor filed a traverse. For the reasons discussed below, the amended petition for writ of habeas corpus will be DENIED.

**BACKGROUND**

A.    The Crimes And The Trial

The California Court of Appeal described the evidence presented at trial.

In essence, the prosecutor presented evidence of three similar robberies to prove that Taylor committed two of them, one with a gun.

1. October 2015 Robbery of a San Leandro 7-Eleven (Counts 2 and 3)

At 10:50 p.m. on October 21, 2015, Venugopal Yara was robbed while working as a clerk at a 7-Eleven convenience store in San Leandro. The robber approached the register with a beverage, handed Yara a $5 bill, and demanded Yara give him the money in the cash register. Holding a gun, the robber took all the money from the register and left.

Surveillance video showed that the robber was wearing yellow or green gloves with black palms, a beanie with a snowflake pattern, a black hoodie with plastic tips on the drawstrings, and gray Nike shoes.

2. <u>Uncharged November 2015 Robbery of a San Francisco Grocery Outlet</u>

Travis Dawson, the owner-operator of a Grocery Outlet in San Francisco, testified that the Grocery Outlet was robbed while Christopher Weimer was working as a cashier around 8:12 p.m. on November 4, 2015. Surveillance footage showed a man wearing a beanie approach Weimer with a beverage, take approximately $300 from the cash register, and leave.

3. <u>Taylor's November 2015 Robbery of a San Leandro Chevron (Count 1)</u>

In November 2015, the San Francisco Police Department was investigating a series of robberies in which, like the 7-Eleven and Grocery Outlet robberies, the culprit entered a business on a Wednesday evening near closing time, approached the cashier as if to buy a small item, waited for the register to open, and then produced a firearm and took money from the register. Police obtained a search warrant for the telephone records of Sekou Carson, who had been arrested for two similar robberies. Carson's phone records revealed his connection to LaCarl Dow; Dow had been arrested with Taylor earlier in 2015, so San Francisco Police Sergeant Thomas Maguire obtained Taylor's mugshot.

Sergeant Maguire compared Taylor's mugshot to images of the suspect captured on surveillance footage of the San Francisco Grocery Outlet robbery on November 4, 2015. Based on similarities in height, skin tone, weight, and facial features, Maguire concluded that the suspect in the surveillance footage resembled Taylor.

Police obtained warrants to place tracking devices on Taylor's and Dow's vehicles. Tracking Taylor's vehicle on Wednesday, November 18, 2015, police saw Taylor and Dow "case" several gas stations and grocery stores. No robbery was committed, and surveillance ended when Taylor and Dow returned to Dow's residence.

Believing that Taylor and Dow were still planning a robbery, police tracked Taylor's vehicle again on November 19, 2015. They observed Taylor and Dow case several small stores before going to a Chevron gas station in San Leandro. Taylor parked around the corner from the station and entered the store associated with it; Dow stayed in the vehicle.

Through a window behind the store's counter, San Francisco Police Sergeant Matthew Mason observed Taylor take a beverage to the counter, point a gun (that turned out to be fake) at the cashier when the register was opened, take money from the register, and leave the store. Taylor was arrested, wearing neon gloves, a black jacket, and gray Nike shoes.

Other officers approached Dow, who was still in Taylor's vehicle. In a search of Taylor's car, police found yellow or green gloves with black palms, a black hoodie with plastic tips on the drawstrings, and a beanie with a snowflake design. Taylor's DNA was on the beanie, while Dow's was not.

4. <u>Police Conclude It Was Taylor Who Also Robbed the San Leandro 7-Eleven</u>

San Leandro Police Officer Timothy Perry testified to the similarities between Taylor—the undisputed Chevron robber—and the suspect in the surveillance footage of the 7-Eleven robbery. The beanie that was found in Taylor's vehicle at the scene

of the Chevron robbery, and that was later confirmed to carry his DNA, had the same snowflake pattern as the beanie worn by the perpetrator of the 7-Eleven robbery. The gloves found in Taylor's vehicle at the Chevron robbery, like those seen in the 7-Eleven surveillance footage, were green or yellow with black palms. The black hoodie found in Taylor's vehicle, like the one in the surveillance footage, had plastic tips on the drawstrings. And the gray Nike shoes Taylor wore during the Chevron robbery appeared on the robber of the 7-Eleven. Perry concluded that Taylor was the 7-Eleven robber based on these similarities, as well as the fact that Taylor's cohort—Dow—had a different height, weight and skin tone.

Sergeant Mason, from the San Francisco Police Department, also watched the surveillance footage of the 7-Eleven robbery. He concluded that Taylor was the 7-Eleven robber based on his personal surveillance of Taylor, having "watched the way he moved," observing his face, and noting that Taylor was "wearing the same snowflake beanie and the same shoes."[2]

> [Footnote 2:] Sergeant Mason further testified that the snowflake beanie and neon-green gloves (with a logo on the back side) recovered at the scene of the Chevron robbery, and the gray shoes Taylor wore during that robbery, were worn by Taylor in the uncharged Grocery Outlet robbery. Aside from Taylor's clothing, Sergeant Mason recognized Taylor to be the Grocery Outlet robber based on his body stature, build, and the way he moved as depicted in the Grocery Outlet surveillance footage.

*People v. Taylor,* No. A148960, 2018 WL 3968496, at *1-2 (Cal. Ct. App. Aug. 20, 2018).

At a jury trial in Alameda County Superior Court, the jury found Taylor guilty of two counts of second degree robbery and one count of possession of a firearm by a felon. The jury also found true the allegation that Taylor personally used a firearm in the commission of the 7-Eleven robbery. He admitted to having suffered two prior convictions that resulted in prison terms. *Id.* at *3. On June 14, 2016, Taylor was sentenced to a total of 15 years in state prison. *See id.* Eventually, the sentence enhancements for the prior convictions were stricken, apparently resulting in a new total term of 14 years in state prison. *See People v. Taylor,* No. A156935 (Cal. Ct. App. Feb. 6, 2020) (Docket No. 26-17 at 49-54); *see also Taylor,* 2018 WL 3968496, at *3 (explaining that the trial court originally imposed a one-year term for one prior felony conviction and stayed the term for the second prior felony conviction).

B.      Procedural History

The post-conviction procedural history is recounted in some detail because there is a procedural default issue in this case.

Taylor appealed from his conviction.  The California Court of Appeal affirmed the judgment of conviction but remanded the case for resentencing so that the trial court could consider striking the firearm enhancement under newly enacted legislation.  Docket No. 26-15 at 32.  The California Supreme Court denied his petition for review on October 31, 2018.  Docket No. 26-16 at 39.

Taylor next filed a habeas petition in the Alameda County Superior Court.  In that petition, he alleged: (1) trial counsel provided ineffective assistance in failing to conduct a reasonable pre-trial investigation of the San Leandro Police Department's policy on inventorying impounded cars and failed to challenge the search of Taylor's car; (2) the search and seizure violated the Fourth Amendment; and (3) appellate counsel provided ineffective assistance in failing to urge on direct appeal that trial counsel was ineffective and that the search was unlawful.  The Alameda County Superior Court denied the petition on November 30, 2018.  Docket No. 26-18 at 22.

On January 4, 2019, Taylor filed a habeas petition in the California Court of Appeal (Case No. A156139) that raised the same claims as presented in the petition he filed earlier in the Alameda County Superior Court.  The California Court of Appeal denied the petition as untimely as to all claims except the claim for ineffective assistance of appellate counsel and, alternatively, denied the petition on the merits for the reasons stated in the superior court's order.  *Id.* at 63.

On February 14, 2019, Taylor filed a habeas petition in the California Supreme Court (Case No. S254070) that raised the same claims as presented in the petition he earlier filed in the Alameda County Superior Court and the California Court of Appeal.  The California Supreme Court summarily denied the petition on June 12, 2019.  *Id.* at 91.

On March 29, 2019, the trial court held a new sentencing hearing pursuant to the remand on direct appeal (i.e., to determine whether to strike the firearm enhancement).  The trial court declined to exercise its discretion and again imposed the sentence totaling 15 years.  *People v. Taylor*, No. A156935, 2020 WL 593688, at *1 (Cal. Ct. App. Feb. 6, 2020).

United States District Court
Northern District of California

4

On April 10, 2019, Taylor filed an appeal in the California Court of Appeal (in Case No. A156935) to challenge the resentencing. The California Court of Appeal issued a decision on February 6, 2020, striking the prior prison term enhancements but otherwise affirming. *Id.*

On November 18, 2019 – while the appeal from the resentencing was pending and after he filed his federal habeas action – Taylor filed another habeas petition in the California Supreme Court (Case No. S259212). In this petition, he alleged the following claims: (1) the evidence was insufficient to support the personal-use firearm enhancement; (2) the prosecutor had engaged in misconduct by eliciting testimony about the "Green Glove Robberies" or the "Green Glove Task Force" in contravention of the trial court's pretrial order; (3) appellate counsel had been ineffective in failing to raise the insufficient-evidence claim on appeal; and (4) trial and appellate counsel both had been ineffective in failing to raise the prosecutorial misconduct claim. The California Supreme Court denied the habeas petition as untimely and successive in an order that stated in its entirety: "The petition for writ of habeas corpus is denied. (See *In re Robbins* (1988) 18 Cal. 4th 770, 780 [courts will not entertain habeas corpus claims that are untimely]; *In re Clark* (1993) 5 Cal. 4th 750, 767-769 [courts will not entertain habeas corpus claims that are successive].)" Docket No. 19 at 74; *see* Docket No. 26-18 at 107.

Taylor filed his federal petition for writ of habeas corpus on September 9, 2019. He later obtained a stay to exhaust some claims as to which state court remedies had not been exhausted and later still filed an amended petition. The court ordered respondent to show cause why the amended petition should not be granted. Respondent has filed an answer to the amended petition and Taylor has filed a traverse. The matter is now ready for decision.

## JURISDICTION AND VENUE

This court has subject matter jurisdiction over this action for a writ of habeas corpus under 28 U.S.C. § 2254. 28 U.S.C. § 1331. This action is in the proper venue because the amended petition concerns the conviction and sentence of a person convicted in Alameda County, California, which is within this judicial district. 28 U.S.C. §§ 84, 2241(d).

**LEGAL STANDARD**

This court may entertain a petition for writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).  The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") amended § 2254 to impose new restrictions on federal habeas review.  A petition may not be granted with respect to any claim that was adjudicated on the merits in state court unless the state court's adjudication of the claim:  "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

"Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." *Williams (Terry) v. Taylor*, 529 U.S. 362, 412-13 (2000).  "Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id*. at 413.  "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must also be unreasonable." *Id*. at 411.  "A federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was 'objectively unreasonable.'" *Id*. at 409.

The state-court decision to which § 2254(d) applies is the "last reasoned decision" of the state court.  *Ylst v. Nunnemaker*, 501 U.S. 797, 803-04 (1991).  When confronted with an unexplained decision from the last state court to have been presented with the issue, "the federal court should 'look through' the unexplained decision to the last related state-court decision that does provide a relevant rationale.  It should then presume that the unexplained decision adopted the same

United States District Court
Northern District of California

reasoning." *Wilson v. Sellers*, 138 S. Ct. 1188, 1192 (2018).

Section 2254(d) generally applies to unexplained as well as reasoned decisions. "When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." *Harrington v. Richter*, 562 U.S. 86, 99 (2011). When the state court has denied a federal constitutional claim on the merits without explanation, and there is no reasoned decision to look through to, the federal habeas court "must determine what arguments or theories supported or . . . could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the U.S. Supreme] Court." *Id.* at 102.

# DISCUSSION

A.   The Uncharged Offense And The Jury Instruction Thereon

Taylor contends that the prosecutor's burden of proof was lowered by the jury instructions about uncharged offense evidence in the unusual situation in his case, where the same evidence is used to prove the identity of the offender in both the uncharged and charged offenses and the defendant disputes he was the perpetrator of either offense. He contends that the "United States Constitution requires the identity of the defendant in an uncharged offense be proven beyond a reasonable doubt before that evidence may be used to prove identity in a charged crime." Docket No. 19 at 60.

Giving the *pro se* amended habeas petition the liberal construction to which it is entitled, Taylor appears to challenge both the admission of the uncharged offense evidence and the related jury instruction, even though the amended order to show cause identified the issue as being that "the trial court erred in allowing the use of an uncharged prior offense to prove identity in the charged offense." Docket No. 22 at 3. This court will analyze the constitutional issues relevant to the admission of evidence as well as the jury instruction that accompanied the uncharged offense evidence.

1          1.          The Evidence And Instructions At Trial

2          Taylor was suspected of committing three robberies: the Chevron robbery (where he was

3   caught in the act by police who watched the robbery unfold), the 7-Eleven robbery (for which there

4   was surveillance video), and the *uncharged* robbery of a Grocery Outlet in San Francisco (for which

5   there was surveillance video).  The prosecution moved *in limine* to admit evidence regarding the

6   Grocery Outlet robbery pursuant to California Evidence Code § 1101(b), which allows evidence of

7   an uncharged crime to be admitted "when relevant to prove some fact (such as motive, opportunity,

8   intent, preparation, plan, knowledge, [or] identity . . .) other than his or her disposition to commit

9   such an act."  The prosecutor urged that the evidence was relevant to identity and common plan.  He

10  identified several similarities between the Grocery Outlet and 7-Eleven robberies:  during both

11  robberies, the perpetrator wore a green and white snowflake beanie, a black hoodie with plastic

12  aglets on the drawstrings, neon green gloves, dark pants, and Nike sneakers that were part gray;

13  during both robberies, the perpetrator held a firearm consistent with a black .40 caliber

14  semiautomatic handgun; and in both robberies, the perpetrator took a beverage from the refrigerator

15  to the counter, handed money to the clerk, pulled out a handgun and demanded money when the

16  clerk opened the register for the sale, and reached over and grabbed the money from the register

17  drawer.  *See Taylor*, 2018 WL 3968496, at *3.  The prosecutor urged that the two crimes were so

18  similar as to reflect the robber's "signature."  CT 61.  Defense counsel argued that the robberies

19  were not sufficiently similar to support the admission of the evidence.  CT 80-82.  The trial court

20  ruled that the evidence of the Grocery Outlet robbery was admissible to show identity and a common

21  plan or scheme.  RT 53-54.

22          At trial, the prosecutor presented argument and evidence about the Grocery Outlet robbery.

23  The prosecutor told the jury during his opening statement that, "in a case where a suspect does

24  something . . . so similar . . . as to be like a signature, you get to hear about it . . . for the common

25  plan, common scheme, and you get to the see the identity of that person."  RT 66.  The prosecutor

26  also pointed to the similarities in the 7-Eleven and Grocery Outlet robberies.  RT 67.  Two members

27  of the San Francisco Police Department testified about the Grocery Outlet robbery: (a) sergeant

28  Maguire had watched the surveillance video and "believed that the suspect in [the Grocery Outlet]

United States District Court
Northern District of California

video resembled Mr. Taylor" due to similarities in height, skin tone, facial features, and weight, RT 337-38; and (b) sergeant Mason identified the similarities between the Grocery Outlet robber's clothes and those found on Taylor and in his car at the time of the Chevron robbery, as well as the perpetrator's "build" and movement in the Grocery Outlet robbery as identifying factors, RT 417-25.  During closing argument, the prosecutor recounted the similarities between the Grocery Outlet and 7-Eleven robberies, and emphasized the relevance of the Grocery Outlet robbery to the question of identity of the robber and common plan or scheme with the 7-Eleven robbery.  RT 524-27.

The trial court gave this jury instruction relevant to the Grocery Outlet robbery evidence:

The People have presented evidence that the defendant committed another offense of robbery (Grocery Outlet) that is not charged in this case.

You may consider this evidence only if the People have *proved by a preponderance of the evidence* that the defendant in fact commit the uncharged offense.

Proof by a preponderance of the evidence is a different burden of proof than proof beyond a reasonable doubt.

A fact is proven by a preponderance of the evidence if you conclude that it is *more likely than not* that the fact is true.

If the People have not met this burden, you must disregard this evidence entirely.

If you decide that the defendant committed the uncharged offense, you may, but are not required to, consider that evidence for the limited purpose of deciding whether or not:

The defendant was the person who committed the offense alleged in this case; or

The defendant had a plan or scheme to commit the offenses alleged in this case.

In evaluating this evidence, consider the similarity or lack of similarity between the uncharged offense and the charged offenses.

Do not consider this evidence for any other purpose, except for the limited purpose of proving identity or common plan.

Do not conclude from this evidence that the defendant has a bad character or is disposed to commit crime.

If you conclude that the defendant committed the uncharged offense, that conclusion is only one factor to consider along with all the other evidence.

It is not sufficient by itself to prove that the defendant is guilty of the charged robberies of the personal use of a firearm.

The People must still prove each charge and allegation beyond a reasonable doubt.

United States District Court
Northern District of California

9

CT 113-14 (dual emphasis in source) (CALCRIM No. 375).

The jury instructions also included instructions that Taylor was presumed innocent until proven guilty of the charged offenses beyond a reasonable doubt; the prosecution had to prove guilt beyond a reasonable doubt; whenever instructed as to the People's burden, the jurors should assume that the burden requires proof beyond a reasonable doubt unless instructed otherwise; and defined "proof beyond a reasonable doubt." CT 100-01 (CALCRIM No. 220). The instructions also defined direct and circumstantial evidence; explained that both were acceptable types of evidence; explained that, before the jury "may rely on circumstantial evidence to conclude that a fact necessary to find the defendant guilty has been proven, [the jury] must be convinced that the People have proved each fact essential to that conclusion beyond a reasonable doubt." CT 103-104 (CALCRIM No. 224). And another instruction explained circumstances to consider in evaluating identification testimony; that the "People have the burden of proving beyond a reasonable doubt that it was the defendant who committed the robbery"; and that the jury must find the defendant not guilty if the prosecution did not meet that burden. CT 109-110 (CALCRIM No. 315).

### 2.    California Court Of Appeal's Decision

On direct appeal, Taylor urged that the evidence was improperly admitted under California Evidence Code § 1101(b) because it was not relevant to prove a fact at issue and should have been excluded under California Evidence Code § 352 because its probative value was outweighed by its prejudicial effect. He further urged that the jury instruction that pertained to the evidence unconstitutionally lowered the prosecution's burden of proof.

The California Court of Appeal explained that state law required that, to be relevant to identity, the uncharged and charged offenses "'must share common features that are sufficiently distinctive so as to support an inference that the same person committed both acts'" – similarities "'so unusual and distinctive as to be like a signature.'" *Taylor,* 2018 WL 3968669, at *4 (citation omitted). To be relevant to show a common plan or scheme, the uncharged offense "must share 'sufficient common features with the charged offenses to support the inference that both the uncharged misconduct and the charged offenses are manifestations of a common design or plan,'"

United States District Court
Northern District of California

1   although the plan does not have to be an unusual one.  *Id.* (citation omitted).  The state appellate

2   court found that the standards for both identity and common plan evidence were met in this case.

> The uncharged Grocery Outlet robbery was strikingly similar to the charged 7-Eleven robbery and suggested a common plan to rob the stores.  Both robberies occurred on a Wednesday evening.  Surveillance footage showed that the robber of each business was of a similar height and weight, wore a distinctive snowflake-pattern beanie, wore unusual neon green gloves, approached the store clerk in the same way, used a similar-appearing gun, and took the money in a similar manner.
>
> Taylor nonetheless contends the evidence of the Grocery Outlet robbery was not probative because there was no evidence tying Taylor to the Grocery Outlet robbery other than the evidence linking him to the 7-Eleven robbery.  He asserts that similarities between uncharged and charged offenses do not help establish identity in the charged offense if the identity of the robber in the uncharged offense is in dispute. (Citing *People v. Williams* (2017) 7 Cal.App.5th 644, 677.)
>
> Contrary to Taylor's assertion, there was ample evidence tying him to the Grocery Outlet robbery.  First, the Grocery Outlet robbery was similar not just to the 7-Eleven crime, but also to the Chevron robbery that Taylor undisputedly committed (being caught red-handed).  The distinctive beanie observed in the Grocery Outlet and 7-Eleven robberies was found in Taylor's car, bearing Taylor's DNA, at the scene of the Chevron robbery.  The unusual gloves observed in the Grocery Outlet and 7-Eleven robberies were like the ones Taylor wore during the Chevron robbery.  And the manner in which the Grocery Outlet robber approached the store clerk and took the money resembled Taylor's manner when he robbed the Chevron.
>
> Second, there was independent evidence that Taylor was the robber of the Grocery Outlet.  After viewing the surveillance footage, Sergeant Mason testified that Taylor was the Grocery Outlet robber based on his body stature, build, and the way he moved, as well as his clothing.
>
> Third, the Grocery Outlet robbery was committed within the same general time frame as the Chevron and 7-Eleven robberies, further corroborating the idea that Taylor committed all three robberies as part of a consistent plan.  In short, the evidence of the Grocery Outlet robbery tended to show Taylor's identity as the 7-Eleven robber and the existence of a common scheme.

*Taylor*, 2018 WL 3968496, at *4-5.

    Next, the California Court of Appeal rejected the argument that the Grocery Outlet robbery

evidence should have been excluded under California Evidence Code § 352 on the ground that it

was unduly prejudicial relative to its probative value.  The Grocery Outlet robbery evidence "was

no stronger or more inflammatory than the 7-Eleven robbery" evidence, and the jury had received

limiting instructions about the evidence.  *Taylor*, 2018 WL 3968496, at *5.  Specifically, jury was

informed that it should not conclude from the evidence that Taylor had a bad character or was

disposed to commit a crime, and that any conclusion that Taylor committed the Grocery Outlet

offense would only be one factor to consider with all the other evidence used in determining whether he was guilty of the charged offenses. *Id.* The California Court of Appeal also found unpersuasive Taylor's argument that the Grocery Outlet robbery evidence was "entirely cumulative" of other evidence that tied his robbery of the Chevron to his robbery of the 7-Eleven. *Id.* at *6. The appellate court reasoned that the evidence was not cumulative because (1) "it was the only evidence that Taylor perpetrated the robbery of the Grocery Outlet," and (2) that evidence added to the proof that he committed the 7-Eleven robbery in that the "evidence of the Grocery Outlet robbery showed that a person of Taylor's build, stature, movement, and robbery method, as well as the shoes and clothing he wore or was found in his car, committed not just the Chevron robbery, but also the Grocery Outlet robbery, making it more likely there was a common scheme or plan that also included the 7-Eleven robbery, and that Taylor was the 7-Eleven robber." *Id.* at 6. The appellate court also observed that, if the evidence actually was cumulative, Taylor had failed to show any prejudice from its admission. *Id.*

Finally, the California Court of Appeal rejected Taylor's argument that the CALCRIM No. 375 jury instruction impermissibly lowered the prosecutor's burden of proof. That court explained that the jury instructions also included an instruction that channeled the jury's use of the evidence: "'If you decide that the defendant committed the uncharged offense, you may, but are not required to, consider that evidence for the limited purpose of deciding whether or not: 1) The defendant was the person who committed the offense in this case—I think that would be the 7-Eleven robbery; or, 2) The defendant had a plan or scheme to commit the offenses alleged in this case.'" *Id.* (quoting RT 509). The state appellate court noted that, as Taylor acknowledged, the California Supreme Court had "repeatedly" rejected the argument that the instructions lowered the prosecutor's burden of proof to less than proof beyond a reasonable doubt. *Id.* at *7 (citing, e.g., *People v. Sanchez*, 63 Cal. 4th 411, 461 (Cal. 2016)).

> Taylor proposes that an exception be made to the established rule if "the uncharged offense relies on the same facts to prove identity as the charged offense." Under the instructions in this case, he urges, the jury could have relied solely on the snowflake beanie and black hoodie to find Taylor was the Grocery Outlet robber under a preponderance standard, and then found that the similarities between the Grocery Outlet robbery and the 7-Eleven robbery meant he was guilty of the 7-Eleven robbery beyond a reasonable doubt.

> We find no reasonable likelihood that the jury construed the instructions in an unlawful manner.  The court clearly apprised the jury that the Grocery Outlet evidence was not sufficient to convict Taylor of the 7-Eleven robbery, and that the 7-Eleven robbery had to be proved beyond a reasonable doubt.  Specifically, the court instructed the jury that if it decided Taylor committed the Grocery Outlet robbery, the jurors "may, but are not required to, consider that evidence for the limited purpose of deciding whether or not [Taylor] committed the 7-Eleven robbery," but the Grocery Outlet evidence would be "only one factor to consider along with all the other evidence" and was "not sufficient by itself to prove the defendant was guilty of the charged robberies or the personal use of a firearm."  (Italics added.)  The court emphasized, "The People must still prove each charge and allegation beyond a reasonable doubt."  [¶]  Taylor fails to establish instructional error.

*Taylor*, 2018 WL 3968496, at *7.  The California Court of Appeal's decision focused on state law rather than federal constitutional law.  It did not mention federal constitutional law at all in discussing the challenge to the admission of the evidence and only briefly mentioned that Taylor had argued that the instruction "unconstitutionally lessened" the burden of proof.  *See id.*  Although focused on state law issues, the state appellate court's reasoning on the evidentiary question guides this court's effort to "determine what arguments or theories supported or . . . could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the U.S. Supreme] Court."  *Harrington v. Richter*, 562 U.S. at 102.  On the instructional-error claim, this court must evaluate whether the state appellate court's rejection of the claim was contrary to, or an unreasonable application of any clearly established federal law as set forth by the U.S. Supreme Court.  *See* 28 U.S.C. §2254(d).

3.    Analysis Of Federal Constitutional Claims

a.    The Admission Of The Evidence

Taylor does not identify, and this court has not located, any U.S. Supreme Court holding that the identity of the perpetrator of an uncharged offense must be proven beyond a reasonable doubt before that evidence may be used to prove the identity of the perpetrator of a charged offense.  Rather, the Supreme Court has largely avoided turning evidentiary rulings into constitutional issues unless they render the trial fundamentally unfair.

The U.S. Supreme Court has never held that the introduction of propensity or other allegedly prejudicial evidence violates due process.  *See Estelle v. McGuire*, 502 U.S. 62, 68-70 (1991); *id.* at

United States District Court
Northern District of California

1 75 n.5 ("we express no opinion on whether a state law would violate the Due Process Clause if it

2 permitted the use of 'prior crimes' evidence to show propensity to commit a charged crime"); *id.* at

3 70 (defendant's right to due process was not violated by admission of evidence of older injuries to

4 child because the evidence was admissible on the question of intent vis-à-vis current injuries to that

5 child).

6   The U.S. Supreme Court has, however, established a general principle of "fundamental

7 fairness," i.e., evidence that "is so extremely unfair that its admission violates 'fundamental

8 conceptions of justice'" may violate due process. *Dowling v. United States*, 493 U.S. 342, 352

9 (1990) (quoting *United States v. Lovasco*, 431 U.S. 783, 790 (1977) (due process was not violated

10 by admission of evidence to identify perpetrator and link him to another perpetrator even though the

11 evidence also was related to crime of which defendant had been acquitted)). Thus, a federal habeas

12 court may consider whether the evidence was "so extremely unfair that its admission violates

13 'fundamental conceptions of justice.'" *Id.*

14   In this circuit, the admission of prejudicial evidence may make a trial fundamentally unfair

15 and violate due process "[o]nly if there are no permissible inferences the jury may draw from the

16 evidence." *Jammal v. Van de Kamp*, 926 F.2d 918, 920 (9th Cir. 1991). "Evidence introduced by

17 the prosecution will often raise more than one inference, some permissible, some not; we must rely

18 on the jury to sort them out in light of the court's instructions. Only if there are *no* permissible

19 inferences the jury may draw from the evidence can its admission violate due process. Even then,

20 the evidence must 'be of such quality as necessarily prevents a fair trial.' Only under such

21 circumstances can it be inferred that the jury must have used the evidence for an improper purpose."

22 *Id.* (internal citation and footnote omitted).

23   The evidence of the uncharged Grocery Outlet robbery did not make Taylor's trial

24 fundamentally unfair. The evidence was not inflammatory and there was a permissible inference

25 that could be drawn from it, i.e., that the same person (Taylor) who committed that robbery

26 committed the 7-Eleven robbery. That inference, if drawn by the jury, helped the prosecution meet

27 its burden to show Taylor's guilt of the charged 7-Eleven robbery. Consequently, the California

28 Court of Appeal reasonably could have determined that the admission of the evidence was not so

United States District Court
Northern District of California

14

extremely unfair as to violate fundamental conceptions of justice and due process. *See Dowling*, 493 U.S. at 352. Admission of prior act evidence to show intent, motive, identity, or common plan or scheme, has been found constitutionally permissible. *See, e.g., McGuire*, 502 U.S. at 70–72 (intent); *Williams v. Stewart*, 441 F.3d 1030, 1040 (9th Cir.2006) (identity and intent); *Boyde v. Brown*, 404 F.3d 1159, 1172–73 (9th Cir.2005) (common plan or scheme).

Relying more on logic than constitutional law, Taylor urges that the evidence of the Grocery Outlet robbery should not have been admitted because there was no evidence that established that he committed that robbery without also establishing that he committed the 7-Eleven robbery. But he does not identify any U.S. Supreme Court imposing such a limit on uncharged-offense evidence. Without any holding on point from the U.S. Supreme Court, it cannot be said that the state court's rejection of Taylor's due process claim based on the allegedly special nature of identity evidence of the sort used in his case "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court." 28 U.S.C. § 2254(d)(1).

This court views the evidence similarly to the way respondent and the California Court of Appeal did. First, even if there had to be some evidence to prove the Grocery Outlet robbery that did not also equally prove the 7-Eleven robbery, that evidence existed. The evidence of the uncharged and charged robberies was not identical. Different videotapes showed the different robberies at the different locales. Also, San Francisco police sergeant Maguire testified that his investigation led him to conclude that Taylor was the perpetrator of the Grocery Outlet (but did not testify that Taylor committed the 7-Eleven robbery). *See* RT 336-338. Maguire made his determination by comparing the Grocery Outlet video with what he (Maguire) had personally observed and seen in a photo of Taylor. *See id.* Second, if the evidence proved both the Grocery Outlet and the 7-Eleven robberies equally (as Taylor urges), any error in its admission was harmless. Nothing about the Grocery Outlet robbery made it any more inflammatory or likely to arouse the jury's passions than the evidence of the 7-Eleven robbery. Thus, if the evidence was cumulative, its admission in this case was harmless – or at least it was entirely reasonable for the California Court of Appeal to so conclude. Taylor is not entitled to the writ on his claim that the admission of the evidence of the uncharged Grocery Outlet robbery violated his right to due process.

b.  The Jury Instruction

To obtain federal habeas relief for an error in the jury instructions, a petitioner must show that the error "so infected the entire trial that the resulting conviction violates due process." *Estelle v. McGuire*, 502 U.S. at 72.  A jury instruction violates due process if it fails to give effect to the requirement that "the State must prove every element of the offense." *Middleton v. McNeil*, 541 U.S. 433, 437 (2004).  "A single instruction to a jury may not be judged in artificial isolation, but must be viewed in the context of the overall charge." *Id.* (quoting *Boyde v. California*, 494 U.S. 370, 378 (1990)).  "Even if there is some 'ambiguity, inconsistency, or deficiency' in the instruction, such an error does not necessarily constitute a due process violation." *Waddington v. Sarausad*, 555 U.S. 179, 190 (2009) (quoting *Middleton*, 541 U.S. at 437).  Where a potentially defective instruction is at issue, the court must inquire whether there is a "reasonable likelihood" that the jury applied the challenged instruction in a way that violates the Constitution. *Estelle*, 502 U.S at 72 & n.4; *Boyde*, 494 U.S. at 380.  Even if there is a constitutional error in the instructions, habeas relief is not available unless the error had a substantial and injurious effect or influence in determining the jury's verdict. *Calderon v. Coleman*, 525 U.S. 141, 146-47 (1998); *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993)).

The Due Process Clause of the Fourteenth Amendment requires the prosecution to prove every element charged in a criminal offense beyond a reasonable doubt.  *See In re Winship*, 397 U.S. 358, 364 (1970). The state may adopt a rule that makes it easier for it to meet the requirement of proof beyond a reasonable doubt, so long as the rule does not shift or reduce the burden of proof or otherwise violate a principle of fairness contained in the Due Process Clause.  *See Montana v. Egelhoff*, 518 U.S. 37, 54–55 (1996).

Taylor is not entitled to relief because he fails to show that the California Court of Appeal's rejection of his due process instructional error claim was contrary to, or involved an unreasonable application of, clearly established law as determined by the U.S. Supreme Court.  *See* 28 U.S.C. § 2254(d).  First, the California Court of Appeal reasonably determined that the jury instructions as a whole did not lower the burden of proof on the charged offenses to a standard less than proof beyond a reasonable doubt.  The CALCRIM No. 375 instruction channeled the jury's use of the

evidence and conveyed to the jurors that, if they found that Taylor committed the Grocery Outlet robbery, they could, but were not required to, consider it for the limited purpose of deciding whether he committed the 7-Eleven robbery.  The overall instructions clearly informed the jury that proof by a preponderance of the evidence that Taylor committed the Grocery Outlet robbery was not sufficient to prove beyond a reasonable doubt that he committed the 7-Eleven or Chevron robberies.  The state appellate court reasonably determined that the instructions, as a whole, clearly informed the jury that, before the jury could find Taylor guilty, it had to find that the evidence as a whole established beyond a reasonable doubt that Taylor was guilty of committing the 7-Eleven and Chevron robberies.

It was a reasonable application of U.S. Supreme Court precedent for the California Court of Appeal to determine there was no reasonable likelihood that the jury could interpret the instructions to authorize conviction of the 7-Eleven and Chevron robberies based on a standard of proof of less than proof beyond a reasonable doubt.  Nothing in the instructions authorized the jury to use the preponderance of the evidence standard for anything other than the preliminary determination whether Taylor committed the Grocery Outlet robbery.  The instructions unequivocally explained to the jury that, in all other respects, the reasonable doubt standard applied so that the jury would have to find by proof beyond a reasonable doubt that Taylor committed the 7-Eleven and Chevron robberies in order to return a guilty verdict.  The California Court of Appeal reasonably determined that the instruction – which expressly indicated to the jury that a finding that Taylor committed the uncharged offense was merely one item to be considered along with all other evidence as the jury decided whether the prosecution had proven its case beyond a reasonable doubt – did not lower the burden of proof below the beyond-a-reasonable-doubt standard and therefore did not violate Taylor's right to due process.  This decision would have been in accord with numerous cases in which courts have routinely upheld similarly worded instructions as complying with due process. *See, e.g., Peterson v. Arnold*, 2017 WL 8186305, at *10 (C.D. Cal. Dec. 11, 2017), *report and recommendation adopted*, 2018 WL 1229813 (C.D. Cal. Mar. 7, 2018) (rejecting challenge to use of CALCRIM No. 375); *Kincade v. Allison*, 2012 WL 1455089, at *8 (E.D. Cal. Apr. 25, 2012) (holding that CALCRIM No. 375 "did not lower the ultimate burden of proof and correctly

articulated to the jury that they must find Petitioner guilty beyond a reasonable doubt"); *Alonso v. Barnes*, 2012 WL 892159, at *20 (N.D. Cal. Mar. 14, 2012) ("Instructing the jury with CALCRIM 375 did not violate Petitioner's due process rights because it did not permit a conviction upon less than proof beyond a reasonable doubt."); *cf. Abel v. Sullivan*, 326 F. App'x 431, 434 (9th Cir. 2009) (finding modified version of CALJIC No. 2.50.01 satisfied due process because it "include[d] an explicit admonition that evidence of a prior sexual offense is not, by itself, sufficient to convict the defendant of the charged crimes").  Because there is no reason to believe that the jury misapplied the trial court's instructions regarding the standard of proof necessary to convict Taylor under the Constitution, the California Court of Appeal's rejection of this claim was not contrary to, or an unreasonable application of clearly established federal law.  Taylor is not entitled to the writ on this claim.

**B.**     Fourth Amendment Claim Regarding the Search

When Taylor was arrested for robbing the Chevron, his car trunk was searched by police without a warrant and incriminating items of clothing found therein were used against him.  *See* Docket No. 19 at 14-16.  He alleges that the evidence used against him was the product of an illegal search in violation of his Fourth Amendment rights to be free from unreasonable searches and seizures.

The case of *Stone v. Powell*, 428 U.S. 465, 481-82 (1976) bars federal habeas review of Fourth Amendment claims unless the state did not provide an opportunity for full and fair litigation of those claims.  The existence of a state procedure allowing an opportunity for full and fair litigation of Fourth Amendment claims, rather than a defendant's actual use of those procedures, bars federal habeas consideration of those claims.  *See Newman v. Wengler*, 790 F.3d 876, 880 (9th Cir. 2015); *Gordon v. Duran*, 895 F.2d 610, 613-14 (9th Cir. 1990).  California state procedures provide an opportunity for full litigation of any Fourth Amendment claim. *See Gordon*, 895 F.2d at 613-14 (whether or not defendant litigated Fourth Amendment claim in state court is irrelevant if he had opportunity to do so under California law). The Fourth Amendment claim therefore is dismissed.

1    Although the Fourth Amendment challenge to the search and evidence obtained therefrom

2    cannot support habeas relief, Taylor's related ineffective assistance of counsel claims is not barred

3    by *Stone v. Powell*.  The ineffective-assistance claims are discussed next.

4

5    C.    Claims For Ineffective Assistance of Trial Counsel Regarding Fourth Amendment Issues

6    Taylor claims that trial counsel provided ineffective assistance of counsel (sometimes

7    referred to as "trial-IAC") with respect to several Fourth Amendment issues.  Docket No. 19 at 9-

8    13.  Specifically, he alleges that trial counsel performed deficiently in that he (a) failed to challenge

9    the warrantless search of the trunk of Taylor's car, (b) failed to move to suppress the incriminating

10   clothing found in the trunk, and (c) failed to investigate whether the San Leandro Police Department

11   had a standing policy regarding impounding and inventorying vehicles.

12   Respondent argues that the trial-IAC is procedurally defaulted because the California Court

13   of Appeal rejected the claim as untimely.

14

15        1.    Procedural Default Doctrine

16   A federal court "will not review a question of federal law decided by a state court if the

17   decision of that court rests on a state law ground that is independent of the federal question and

18   adequate to support the judgment."  *Coleman v. Thompson*, 501 U.S. 722, 729 (1991).  "The doctrine

19   applies to bar federal habeas when a state court declined to address a prisoner's federal claims

20   because the prisoner had failed to meet a state procedural requirement.  In these cases, the state

21   judgment rests on independent and adequate state procedural grounds."  *Id.* at 729-30.

22   A state procedural bar is "independent" if the state court explicitly invokes the procedural

23   rule as a separate basis for its decision and the application of the state procedural rule does not

24   depend on a consideration of federal law.  *Vang v. Nevada*, 329 F.3d 1069, 1074-75 (9th Cir. 2003).

25   An "adequate" state rule must be "firmly established and regularly followed."  *Walker v. Martin*,

26   562 U.S. 307, 316 (2011) (quoting *Bear v. Kindler*, 558 U.S. 53, 60-61 (2009)).  A rule can be

27   "firmly established and regularly followed" even if it is discretionary, and even if the state court

28   may choose to deny a procedurally barred claim on the merits.  *See id.* at 316, 319.  The state bears

United States District Court
Northern District of California

19

the burden of proving the adequacy of a state procedural bar.  *Bennett v. Mueller*, 322 F.3d 573, 585-86 (9th Cir. 2003).

### 2.  Taylor's Trial-IAC Claim Is Procedurally Defaulted

Here, Taylor first presented his trial-IAC claim in his first round of habeas petitions in the California courts after his appeal had concluded.  The Alameda County Superior Court denied the claim on the merits.  Docket No. 26-18 at 27-31.  The California Court of Appeal  denied the claim "as untimely" -- citing *In re Clark*, 5 Cal. 4th 750, 782-799 (Cal. 1993), and *In re Robbins*, 18 Cal. 4th 770, 780 (Cal. 1998) – and on the merits in Case No. A156139.  Docket No. 26-18 at 63.  The California Supreme Court summarily denied the habeas petition raising the same claim.  *Id.* at 91.

When confronted with an unexplained decision from the last state court to have been presented with the issue, "the federal court should 'look through' the unexplained decision to the last related state-court decision that does provide a relevant rationale.  It should then presume that the unexplained decision adopted the same reasoning." *Wilson v. Sellers*, 138 S. Ct. 1188, 1192 (2018).  This court thus looks through the California Supreme Court's unexplained denial to the California Court of Appeal's rejection of the petition as untimely and on the merits.  The rejection of the petition as untimely is the state's procedural bar that is at issue here.  The fact that the California Court of Appeal also denied the petition on merits does not eliminate the consequence of the procedural rejection.

A rejection of a petition as untimely with a citation to *Robbins* is an independent and adequate state procedural ground.  *See Walker*, 562 U.S. at 321 (holding that California's timeliness rule is adequate); *Bennett*, 322 F.3d at 582-83 (recognizing that California's timeliness rule is independent of federal law).  Respondent has sufficiently demonstrated that, as a result of the California Court of Appeal's rejection of the habeas petition as untimely with a citation to *Robbins*, Taylor's trial-IAC claim is procedurally defaulted.

The California Court of Appeal's rejection of the trial-IAC claim in Taylor's habeas petition (in Case No. A156139) as untimely, *see Robbins*, 18 Cal. 4th at 780, imposed a state procedural bar that is independent of federal law and adequate to preclude consideration on federal habeas of that

claim.  Unless he overcomes the procedural default, this court cannot reach the merits of Taylor's claim.

          3.      <u>Taylor Does Not Show Cause And Prejudice Or A Miscarriage Of Justice</u>
                        <u>That Would Enable Him To Avoid The Procedural Default</u>

In cases in which the state court decision is based on an independent and adequate state procedural rule, "federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. at 750.  The "cause" standard requires the petitioner to show that "some objective factor external to the defense" or constitutionally ineffective assistance of counsel impeded his efforts to comply with the state's procedural rule.  *See Murray v. Carrier*, 477 U.S. 478, 488 (1986).  The absence or ineffectiveness of post-conviction counsel does not generally establish cause because there is no constitutional right to counsel in state post-conviction proceedings.  *Coleman v. Thompson*, 501 U.S. at 752-54.  To satisfy the prejudice part of the cause-and-prejudice test, the petitioner must show actual prejudice resulting from the errors of which he complains.  *See McCleskey v. Zant*, 499 U.S. 467, 494 (1991).  In the federal habeas context, the "miscarriage of justice" exception is limited to habeas petitioners who can show that "a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Schlup v. Delo*, 513 U.S. 298, 327 (1995) (citing *Murray v. Carrier*, 477 U.S. at 496).

Taylor does not establish cause or prejudice to excuse his default.  He also does not show that the failure to hear his claim would amount to a miscarriage of justice.

          4.      <u>*Martinez v. Ryan* Does Not Enable Taylor To Avoid The Procedural Default</u>

As mentioned above, the absence or ineffective assistance of state post-conviction counsel generally cannot establish cause to excuse a procedural default because there is no constitutional right to counsel in state post-conviction proceedings, *see Coleman v. Thompson*, 501 U.S. at 752-54, but the Supreme Court has created an equitable exception to that general rule.  In *Martinez v.*

*Ryan*, 566 U.S. 1 (2012), the Supreme Court announced an equitable exception by which cause may be found for excusing a procedurally defaulted trial-IAC claim where a petitioner could not have raised the claim on direct review and was afforded no counsel or only ineffective counsel on state collateral review.  566 U.S. at 14.

> [A] federal habeas court [may] find "cause," thereby excusing a defendant's procedural default, where (1) the claim of "ineffective assistance of trial counsel" was a "substantial" claim; (2) the "cause" consisted of there being "no counsel" or only "ineffective" counsel during the state collateral review proceeding; (3) the state collateral proceeding was the "initial" review proceeding in respect to the "ineffective-assistance-of-trial-counsel claim"; and (4) state law requires that an "ineffective assistance of trial counsel [claim] . . . be raised in an initial-review collateral proceeding."

*Trevino v. Thaler*, 569 U.S. 413, 423 (2013) (quoting *Martinez*, 566 U.S. at 13-17).

Taylor proceeded without counsel in his state habeas proceedings, so the *Martinez* exception might apply to him.  *See Martinez*, 566 U.S. at 17.  Respondent argues that the trial-IAC claim is meritless and therefore does not satisfy the *Martinez* requirement that the trial-IAC claim be a "substantial" one.  This court agrees.

### a.    Trial-IAC Standards

The Sixth Amendment right to counsel guarantees not only assistance, but effective assistance of counsel.  *Strickland v. Washington*, 466 U.S. 668, 686 (1984).  The benchmark for judging any claim of ineffectiveness is whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied upon as having produced a just result.  *Id.*  In order to prevail on a Sixth Amendment ineffectiveness of counsel claim, a petitioner must establish two things.  First, he must establish that counsel's performance was deficient, i.e., that it fell below an "objective standard of reasonableness" under prevailing professional norms.  *Strickland*, 466 U.S. at 687-88.  Second, he must establish that he was prejudiced by counsel's deficient performance, i.e., that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Id.* at 694.  A reasonable probability is a probability sufficient to undermine confidence in the outcome.  *Id.*[1]

---

[1] When deciding whether ineffective assistance of counsel constitutes cause for procedural

United States District Court
Northern District of California

"Where defense counsel's failure to litigate a Fourth Amendment claim competently is the principal allegation of ineffectiveness, the defendant must also prove that his Fourth Amendment claim is meritorious and that there is a reasonable probability that the verdict would have been different absent the excludable evidence in order to demonstrate actual prejudice." *Kimmelman v. Morrison*, 477 U.S. 365, 375 (1986). A lawyer need not file a motion that she knows to be meritless on the facts and the law. *See Wilson v. Henry*, 185 F.3d 986, 990 (9th Cir. 1999) ("to show prejudice under *Strickland* from failure to file a motion, [a petitioner] must show that (1) had his counsel filed the motion, it is reasonable that the trial court would have granted it as meritorious, and (2) had the motion been granted, it is reasonable that there would have been an outcome more favorable to him."); *see also Rupe v. Wood*, 93 F.3d 1434, 1445 (9th Cir. 1996) (failure to take futile action can never be deficient performance).

### b.   Taylor's Trial-IAC Claim

Taylor claims that trial counsel was ineffective with regard to the presentation and investigation of Fourth Amendment issues. He contends that trial counsel should have challenged the warrantless search of the trunk of Taylor's car and moved to suppress the incriminating clothing found in the trunk. And he contends that trial counsel should have investigated a police department's policy regarding impounding vehicles and inventorying their contents, as the absence of a policy would have undercut any contention that the search of his trunk was a permissible inventory search.[2]

The Alameda County Superior Court rejected Taylor's trial-IAC claim on the grounds that a Fourth Amendment challenge to the search would have been futile because the search was permissible as a search incident to a lawful arrest and as a search under the "automobile exception"

---

default, AEDPA deference is not given to the state court determination on that claim; ineffectiveness of counsel is decided "de novo" under *Strickland*. *See Visciotti v Martel*, 862 F.3d 749, 769 (9th Cir. 2016). Respondent's argument to the contrary, *see* Docket No. 25-1 at 35, is rejected.

[2] "Under the 'community caretaking' doctrine, police may, without a warrant, impound and search a motor vehicle so long as they do so in conformance with the standardized procedures of the local police department and in furtherance of a community caretaking purpose, such as promoting public safety or the efficient flow of traffic." *United States v. Torres*, 828 F.3d 1113, 1118 (9th Cir. 2016).

United States District Court
Northern District of California

1   (another wording of the "vehicle exception").  Docket No. 26-18 at 29-30.  The superior court also

2   observed that the failure to investigate the police department's policy about inventorying impounded

3   vehicles could not support relief because Taylor had failed to show there was not a policy and

4   because the search was permissible under other exceptions to the warrant requirement.  *Id.* at 31.

5           This court does not defer to the Alameda County Superior Court's reasoning that was

6   adopted by the California Court of Appeal, *see Visciotti*, 862 F.3d at 769, but reaches one of the

7   same conclusions, i.e., the search was permissible under the vehicle exception to the warrant

8   requirement.  That conclusion is fatal to Taylor's trial-IAC claim.

9           Taylor's claim falters on both the deficient performance and prejudice prong of the

10  *Strickland* test because a Fourth Amendment challenge to the search would have been meritless.

11  The warrantless search of the car trunk was permissible under the vehicle exception to the warrant

12  requirement.

13          Although the Fourth Amendment generally requires police to secure a warrant before

14  conducting a search,  *California v. Carney,* 471 U.S. 386, 390-91 (1985), there is an exception for

15  certain vehicle searches, *see Carroll v. United States*, 267 U.S. 132, 153–54 (1925).  Under the

16  vehicle exception, officers may search a vehicle and any containers found therein without a warrant

17  if they have probable cause to believe evidence or contraband is contained therein.  *California v.*

18  *Acevedo*, 500 U.S. 565, 580 (1991); *United States v. Ross*, 456 U.S. 798, 821–22, 825 (1982).  The

19  vehicle exception is motivated by the supposedly lower expectation of privacy individuals have in

20  their vehicles as well as the mobility of vehicles, which allows evidence contained within those

21  vehicles to be easily concealed from the police.  *See Carroll*, 267 U.S. at 153.  The permissible

22  scope of a vehicle exception search is "broader" than that of a search incident to arrest: "If there is

23  probable cause to believe a vehicle contains evidence of criminal activity, [*Ross*] authorizes a search

24  of any area of the vehicle in which the evidence might be found . . . .  *Ross* allows searches for

25  evidence relevant to offenses other than the offense of arrest."  *Arizona v. Gant*, 556 U.S. 332, 347

26  (2009) (citing *Ross*, 456 U.S. at 820–21).

27          Taylor does not demonstrate that counsel could have made a successful Fourth Amendment

28  challenge to the search that was permissible under the vehicle-exception to the warrant requirement.

United States District Court
Northern District of California

Taylor had driven his car to the Chevron and parked it nearby before he entered the Chevron where a police sergeant observed him committing the robbery with the replica gun and nabbed him as he exited the Chevron.  His confederate, LaCarl Dow, exited from Taylor's car when other police officers arrived at the car.  The police observed, apparently in plain view, two gloves that had black palms and yellow or green dorsal sides on the passenger side floorboard area where Dow had been sitting in the car; detective Perry testified that the gloves matched those worn by the suspects in the surveillance video of the 7-Eleven store several weeks earlier.  RT 231-33.  The police had been following Taylor that day and earlier in the week and had observed him visiting other gas stations and small stores, which the police believed showed him casing those places to later commit a robbery.[3]  By the time the police determined to conduct surveillance on Taylor, at least one police sergeant believed Taylor had committed one or two earlier robberies based on similarities between his appearance and movements and those of the robber shown on a surveillance video of the Grocery Outlet robbery just a few weeks earlier.  Taylor does not show that counsel would have been able to show that there was not probable cause to believe the vehicle contained evidence that was relevant to his earlier and/or present criminal activities.  Taylor even concedes in his traverse that "police more than likely had probable cause to apply for a search warrant."  Docket No. 37 at 16.  The superior court on habeas observed that there *was* probable cause to believe the car contained contraband or evidence of a crime because Taylor "had just been arrested for a robbery and was suspected of a prior robbery," and had been "closely surveilled for hours leading up to the robbery driving to various locations, and just the day before, was observed 'casing' several gas stations and grocery stores."  *See* Docket No. 26-18 at 30.

In light of the applicability of the vehicle exception to the warrant requirement, there is no showing that counsel would have succeeded had he challenged the search of Taylor's car trunk or

_____

[3] Taylor urges at one point that there was testimony that his Honda was "not a car of interest" in the series of robberies the San Francisco police were investigating.  *See* Docket No. 37 at 16. Although the Honda may not have been a "car of interest" earlier in the investigation, the sergeants' testimony is clear that the police became very interested in the Honda and its occupant a couple of days before the Chevron robbery after they saw the occupants of the Honda and Dow's Impala meeting in a gas station and the Honda later following the Impala.  *See* RT 342-46, 383-84.  In fact, sergeant Maguire obtained a search warrant to put a GPS tracker on the Honda on November 17 and attached that tracker just a day before the November 19 Chevron robbery.  RT 342-45.

moved to suppress the evidence obtained from the trunk.  What little evidence exists about counsel's reasoning suggests that counsel was aware of the problems posed by the vehicle exception and another exception to the warrant requirement:  during a *Marsden* hearing (to replace counsel), trial counsel stated that the search of Taylor's Honda "was done incident to the arrest and would be – would have been done under an emergency sort of *movable . . . vehicle that would need to be searched*."  Docket No. 19 at 37 (emphasis added).

Trial counsel's failure to investigate whether the search also would satisfy the requirements for an inventory search does not support habeas relief.  "[C]ounsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Strickland*, 466 U.S. at 690-91.  Counsel's decision not to investigate must be assessed for reasonableness in the circumstances, with a "heavy measure of deference to counsel's judgments." *Id.*  As mentioned above, the *Marsden* transcript shows that counsel believed the search was permissible under the vehicle exception.  As long as the search was permissible under one exception to the warrant requirement, it did not matter whether it also was permissible under another exception. In other words, any effort to show that the search did not fit under the inventory search exception to the warrant requirement simply did not matter because the search fit under the vehicle exception to the warrant requirement.  Counsel would have recognized that fact and reasonably could have chosen not to investigate other exceptions to the warrant requirement.  By not investigating other exceptions that would not result in suppression, counsel did not engage in deficient performance. And no prejudice resulted.

Taylor argues that the vehicle exception did not apply because the police "simply did not attempt to obtain a warrant for petitioner's car."  Docket No. 37 at 16.  He relies on *United States v. Mejia,* 69 F.3d 309, 320 (9th Cir. 1995), which explained that the court had "never applied the inevitable discovery exception so as to excuse the failure to obtain a search warrant where the police had probable cause but simply did not attempt to obtain a warrant."  *See* Docket No. 37 at 16.  But *Mejia* does not help him because it was examining the inevitable discovery exception to the warrant requirement and did not suggest that the observation applied to exceptions other than the inevitable discovery exception.  Indeed, applying *Mejia* to the vehicle exception would eliminate the exception

entirely because the vehicle exception requires the existence of probable cause. It would be nonsensical to believe that an exception that requires the existence of probable cause does not apply when probable cause exists. *Mejia* simply does not apply to Taylor's situation. As with many other exceptions to the warrant requirement, the fact that the evidence might not have been admissible under the inevitable discovery exception does not matter because the evidence was admissible under the vehicle exception. Competent counsel reasonably would have recognized this fact and acted accordingly.

Trial counsel did not engage in deficient performance in not challenging the search of the trunk, not moving to suppress the clothing found in the trunk, and not investigating the existence of a police policy potentially relevant to an inventory search because these would have been futile actions. *See Rupe*, 93 F.3d at 1445. And because these would have been futile actions, Taylor cannot demonstrate prejudice under *Strickland*. There was no reasonable probability that the evidence obtained from Taylor's car trunk would have been excluded even if counsel had taken the steps identified by Taylor.

The trial-IAC claim is not a "substantial" trial-IAC claim. Taylor therefore does not fit within the *Martinez v. Ryan* exception that would allow him to avoid the procedural default on this claim. His trial-IAC claim is rejected as procedurally defaulted.

D.     Claim Of Ineffective Assistance Of *Appellate* Counsel For Failure
       To Raise The Fourth Amendment And Related Trial-IAC Claims

Taylor urges that appellate counsel provided ineffective assistance of counsel (occasionally referred to as "appellate-IAC") for failing to raise the Fourth Amendment issues on appeal and for failing to assert that trial counsel was ineffective for failing to raise those Fourth Amendment issues in the trial court.

The Alameda County Superior Court denied Taylor's appellate-IAC claim in a reasoned decision. That court reviewed the legal standards, including that an appellate-IAC claim has the same two components – deficient performance and prejudice – as a trial-IAC claim. *See* Docket No. 26-18 at 32 (citing *Strickland*, 466 U.S. at 687-88, and other cases). The superior court also

noted that the "mere fact that appellate counsel fails to advance a nonfrivolous claim does not itself establish incompetency" and that it is appropriate for counsel to present only the strongest claims on appeal. *Id.* at 31. The superior court then turned to the facts of this case and explained that a suppression motion would not have been meritorious because the search fit within the "search incident to arrest" or automobile exception to the rule against warrantless searches. *Id.* at 32. Therefore, it "appears that . . . appellate counsel decided to present only the strongest claims rather than every conceivable claim on appeal. Even if appellate counsel erred in failing to challenge the search, such error was not prejudicial because, again, the claim could not have prevailed on appeal." *Id.*

Later, the California Court of Appeal denied Taylor's habeas petition raising the same appellate-IAC claim "for the reasons well articulated by the superior court." Docket No. 26-18 at 63.[4] Later still, the California Supreme Court denied review without comment. This court looks through these unexplained decisions to the Alameda County Superior Court's decision which was the last state court decision that provides a relevant rationale. *See Wilson v. Sellers*, 138 S. Ct. 1188, 1192 (2018). The superior court's decision is analyzed with the deference required by 28 U.S.C. § 2254(d).

The Due Process Clause of the Fourteenth Amendment guarantees a criminal defendant the right to effective assistance of counsel on his first appeal as of right. *See Evitts v. Lucey*, 469 U.S. 387, 391-405 (1985). Claims of ineffective assistance of appellate counsel are reviewed according to the standard set out in *Strickland*. *See Smith v. Robbins*, 528 U.S. 259, 285 (2000). First, the petitioner must show that counsel's performance was objectively unreasonable, which in the appellate context requires the petitioner to demonstrate that counsel acted unreasonably in failing to discover and brief a merit-worthy issue. *Id.*; *Moormann v. Ryan*, 628 F.3d 1102, 1106 (9th Cir. 2010). Second, the petitioner must show prejudice, which in this context means that the petitioner must demonstrate a reasonable probability that, but for appellate counsel's failure to raise the issue, the petitioner would have prevailed in his appeal. *Smith*, 528 U.S. at 285-86; *Moormann*, 628 F.3d

---

[4] The California Court of Appeal determined that all of the claims except the appellate-IAC claim were untimely. The appellate-IAC claim thus is not subject to the procedural default doctrine.

United States District Court
Northern District of California

at 1106.  Appellate counsel does not have a constitutional duty to raise every nonfrivolous issue requested by a defendant. *See Jones v. Barnes*, 463 U.S. 745, 751-54 (1983). The weeding out of weaker issues is widely recognized as one of the hallmarks of effective appellate advocacy.  *See Jones*, 463 U.S. at 751-52.

The Alameda County Superior Court's rejection of Taylor's appellate-IAC claim was not contrary to or an unreasonable application of clearly established precedent from the U.S. Supreme Court.  The superior court identified the correct legal standard – that deficient performance and resulting prejudice had to be shown – and reasonably applied it.  The superior court reasonably determined that appellate counsel did not engage in deficient performance and prejudice did not result because the Fourth Amendment claim was meritless.  The warrantless search was permissible under the vehicle exception to the warrant requirement, so a Fourth Amendment claim on appeal would have been a loser.  Even assuming arguendo that the search was not permissible as a search incident to arrest, the fact that it was permissible under the vehicle exception meant that it was pointless to argue a Fourth Amendment violation on appeal.  As explained earlier in this order, as long as the search fit under one exception to the warrant requirement, a Fourth Amendment challenge would not succeed.  And because the Fourth Amendment claim was meritless, appellate counsel's failure to assert that trial counsel was ineffective for not pressing the Fourth Amendment issues did not amount to deficient performance and there was no resulting prejudice.  Taylor is not entitled to the writ on his appellate-IAC claim.

E.     Challenge To Sufficiency Of The Evidence On The Firearm-Use Enhancement

Taylor next claims that his constitutional right to due process was violated because the evidence was insufficient to support the enhancement for personal use of a firearm because there was no direct connection between the handgun that the police found in LaCarl Dow's apartment and the weapon used in Taylor's robbery of the 7-Eleven.   The firearm-use enhancement under California Penal Code § 12022.53(b) added ten years to Taylor's prison sentence.

Respondent contends that the claim is procedurally defaulted and meritless.

The challenge to the sufficiency of the evidence was presented to the California Supreme Court after Taylor was resentenced. The California Supreme Court denied the habeas petition as untimely and successive in an order that stated in its entirety: "The petition for writ of habeas corpus is denied. (See *In re Robbins* (1988) 18 Cal. 4th 770, 780 [courts will not entertain habeas corpus claims that are untimely]; *In re Clark* (1993) 5 Cal. 4th 750, 767-769 [courts will not entertain habeas corpus claims that are successive].)" Docket No. 19 at 74.

### 1.   The Claim Is Procedurally Defaulted

As explained earlier, a federal habeas court "will not review a question of federal law decided by a state court if the decision of that court rests on a state law ground that is independent of the federal question and adequate to support the judgment." *Coleman v. Thompson*, 501 U.S. at 729. The state judgment must rest on independent and adequate state procedural grounds. *Id.* at 729-30.

Here, the California Supreme Court's denial of the petition with a citation to *In re Clark*, 5 Cal. 4th at 767-69, represents a rejection of the state habeas petition as successive (i.e., repetitious presentation of the same claims) and/or an abuse of the writ (i.e., piecemeal presentation of claims). In *Clark*, the California Supreme Court stated: "It has long been the rule that absent a change in the applicable law or the facts, the court will not consider repeated applications for habeas corpus presenting claims previously rejected. The court has also refused to consider newly presented grounds for relief which were known to the petitioner at the time of a prior collateral attack on the judgment." *Clark*, 5 Cal. 4th at 767-68 (internal citations omitted).[5] Here, the rule prohibiting the abuse of the writ would be the specific portion of the *Clark* rule against successive/abusive petitions

_____

[5] *Clark* discusses several procedural rules for habeas petitions, so it is necessary to consider the specific pages cited in the California Supreme Court's order to determine which of the rules from *Clark* was applied. The pages cited by the California Supreme Court, pages 767-69, discuss the rule against successive and abusive petitions. Other rules discussed in *Clark* include the requirement that the petitioner explain and justify any significant delay in seeking habeas relief (discussed at page 761) and the rule against raising issues on habeas if they could have been raised on direct appeal (discussed at page 765).

that applies to the challenge to the sufficiency of the evidence that was included in the second habeas petition presented to the California Supreme Court (in Case No. S259212) but had not been presented to that court in the first habeas petition (in Case No. S254070).

Having identified the *Clark* rule against successive/abusive petitions as one of the two state procedural bars imposed on the insufficient evidence claim by the California Supreme Court, this Court next must consider whether that bar is independent and adequate, so as to preclude federal habeas review. *See Coleman v. Thompson*, 501 U.S. at 729. With regard to whether the *Clark* bar on successive/abusive petitions is independent and adequate, this Court adheres to the specific analytic framework described in *Bennett*, 322 F.3d at 585-86.

> Once the state has adequately pled the existence of an independent and adequate state procedural ground as an affirmative defense, the burden to place that defense in issue shifts to the petitioner. The petitioner may satisfy this burden by asserting specific factual allegations that demonstrate the inadequacy of the state procedure, including citation to authority demonstrating inconsistent application of the rule. Once having done so, however, the ultimate burden is the state's.

*Id.* at 586.

Respondent satisfied his initial burden under *Bennett* by identifying Taylor's second petition to the California Supreme Court (i.e., Case No. S259212), noting the rejection of that petition by the California Supreme Court with a citation to the *Clark* bar on successive/abusive petitions, and pleading that the *Clark* bar is an independent and adequate state procedural ground. The "burden to place that defense in issue" then "shift[ed] to the petitioner," *Bennett*, 322 F.3d at 586. Taylor did not meet the burden that shifted to him, as nothing in his petition or traverse puts the *Clark* bar's independence or adequacy in issue.

The independence of the bar is readily apparent. The *Clark* bar is independent because the California Supreme Court "explicitly invoke[d] the procedural rule as a separate basis for its decision," *Vang*, 329 F.3d at 1074, and the application of the bar did not "depend[] on a consideration of federal law," *id.* at 1075, because federal law plays no role in determining whether a new habeas petition has been filed after an earlier petition that did not include that claim has been denied. *See generally In re Robbins*, 18 Cal. 4th at 811 (application of the rule prohibiting

successive petitions is independent of federal law); *Clark*, 5 Cal. 4th at 767-69 (describing successive/abusive petition rule without any indication of a federal law role in the determination of whether a petition is successive); *see also Bennett*, 322 F.3d at 581 (rule that is not "interwoven with federal law" is an independent state procedural ground).

As noted earlier, to be adequate, the state court rule must be firmly established and regularly followed. *See Walker*, 562 U.S. at 316. Although the Ninth Circuit has not yet ruled on whether the *Clark* bar on successive/abusive petitions is adequate, the Ninth Circuit has implied that the bar is independent and adequate when it upheld a procedural default based on the *Clark* bar in *Trieu v. Fox*, 764 F. App'x. 624 (9th Cir. 2019). Several district court decisions also have concluded that the *Clark* bar is adequate. *See, e.g., Flowers v. Foulk*, 2016 WL 4611554, *4 (N.D. Cal. 2016) (determining that claims were procedurally defaulted because *Clark* bars on untimely petitions and successive petitions were both adequate and independent to preclude federal habeas review); *Rutledge v. Katavich*, 2012 WL 2054975, at *6-7 (N.D. Cal. 2012) (dismissing claim as procedurally defaulted due to California Supreme Court's rejection of petition in 2011 with citation to *Clark;* after respondent pled the *Clark* bar on successive/abusive petitions, and petitioner did not make any showing in response, "California's procedural bar against successive petitions will be imposed against petitioner's instant claims alleging ineffective assistance of counsel," absent petitioner showing cause and prejudice or a miscarriage of justice); *Arroyo v. Curry*, 2009 WL 723877, at *6 (N.D. Cal. 2009) (finding "that Respondent has satisfactorily established that California's procedural bar against successive petitions as applied in practice was an adequate state ground for rejecting Petitioner's second habeas petition" in 2006). Respondent has satisfied his burden to show that the *Clark* rule against successive/abusive petitions is adequate. *See generally Carter v. Giurbino*, 385 F.3d 1194, 1198 (9th Cir. 2004) (finding that state met its burden with regard to rule in *In re Lindley*, 29 Cal.2d 709 (Cal. 1947) (i.e., that insufficiency of evidence claims had to be brought on direct appeal rather than habeas) where petitioner did "not argue or come forward with any evidence that the *Lindley* rule is not firmly established *and* regularly followed by the California courts."). This court agrees and concludes that the *Clark* bar on successive/abusive petitions is independent and adequate, sufficient to bar federal court consideration of the claims to which it was applied.

As mentioned earlier in Section C.2, the procedural bar of untimeliness represented by the citation to *In re Robbins*, 18 Cal. 4th at 780, also is independent and adequate.

The California Supreme Court imposed two state procedural bars that are adequate and independent of federal law. The insufficient-evidence claim is procedurally defaulted. Unless Taylor shows cause and prejudice or a miscarriage of justice, the court may not reach the merits of procedurally defaulted claims. *See Coleman v. Thompson*, 501 U.S. at 750.[6]

Taylor argues that the procedural bar should not apply because the U.S. Supreme Court determined in *Magwood v. Patterson*, 561 U.S. 320 (2010), that a petition filed after a new sentencing results in a new judgment is not barred by the rule against successive petitions. *See* Docket No. 37 at 20. But *Magwood* did not address California's successive petition rule and instead focused on the *federal* rule against successive petitions. The case "turn[ed] on the meaning of the phrase 'second or successive' in § 2244(b)." *Magwood*, 561 U.S. at 330. It does not appear that *Magwood* precludes a state, such as California, from adopting its own procedural rules about when petitions filed in the state courts are second or successive. Rather, the Supreme Court indicates that state procedural bars and the federal procedural default doctrine are left undisturbed by its holding. *See Magwood*, 561 U.S. at 340. This court thus does not reexamine the state court's interpretation and application of California law that led to the imposition of the procedural bar. *See Wood v. Hall*, 130 F.3d 373, 379 (9th Cir. 1999).

Taylor also argues that his claim *was* presented to the California Court of Appeal in his supplemental brief on appeal. *See* Docket No. 37 at 20. That is incorrect. The supplemental brief argued that resentencing was required under a newly enacted sentencing provision that gave the trial court discretion, and did not argue the evidence was insufficient to support the verdict. *See* Docket No. 26-15 at 3.

---

[6] The exception to the procedural default rule in *Martinez v. Ryan* is limited to situations where the underlying claim is a claim of ineffective assistance of trial counsel. *Martinez v. Ryan* does not allow a federal court to entertain other procedurally defaulted claims, such as claims about the sufficiency of the evidence or prosecutorial misconduct. *See Pizzuto v. Ramirez*, 783 F.3d 1171, 1177 (9th Cir. 2015). Nor may the federal court use *Martinez v. Ryan* to review the merits of a defaulted appellate-IAC claim. *See Davila v. Davis*, 137 S. Ct. 2058, 2061 (2017).

United States District Court
Northern District of California

Taylor has not established cause or prejudice to overcome the procedural default, or shown that the failure to consider the insufficient-evidence claim will result in a fundamental miscarriage of justice. The insufficient claim therefore is procedurally defaulted and for that reason is denied. Out of an abundance of caution, the court will also consider the merits of the claim.

### 2. The Challenge To The Sufficiency Of The Evidence Also Fails On The Merits

The Due Process Clause "protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship*, 397 U.S. 358, 364 (1970). A court reviewing a conviction does not determine whether it is satisfied that the evidence established guilt beyond a reasonable doubt and instead determines whether, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). Only if no rational trier of fact could have found proof of guilt beyond a reasonable doubt may a court conclude that the evidence is insufficient. *See Jackson*, 443 U.S. at 324. The "prosecution need not affirmatively 'rule out every hypothesis except that of guilt,'" and the reviewing federal court "'faced with a record of historical facts that supports conflicting inferences must presume – even if it does not affirmatively appear in the record – that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution.'" *Wright v. West*, 505 U.S. 277, 296-97 (1992) (quoting *Jackson*, 443 U.S. at 326).

The *Jackson* standard also applies to state sentence enhancements: a petitioner can obtain habeas relief if no rational trier of fact could find the elements of the enhancement true beyond a reasonable doubt. *Garcia v. Carey*, 395 F.3d 1099, 1102 (9th Cir. 2005), *overruled on other grounds as stated in Emery v. Clark*, 643 F.3d 1210, 1215 (9th Cir. 2011).

"*Jackson* leaves juries broad discretion in deciding what inferences to draw from the evidence presented at trial, requiring only that jurors 'draw reasonable inferences from basic facts to ultimate facts.'" *Coleman v. Johnson*, 566 U.S. 650, 655 (2012) (per curiam) (quoting *Jackson*, 443 U.S. at 319). "Circumstantial evidence and inferences drawn from it may be sufficient to sustain a conviction. . . . Nevertheless, 'mere suspicion or speculation cannot be the basis for creation of

1   logical inferences.'"  *Walters v. Maass*, 45 F.3d 1355, 1358 (9th Cir.1995).

2          The *Jackson* standard is applied to a crime as that crime is defined by state law.  *Jackson*,

3   443 U.S. at 324 n.16.  Under California Penal Code § 12022.53(b), a person who, in the commission

4   of certain listed felonies, including robbery, "personally uses a firearm" is subject to a 10-year

5   sentence enhancement.  At trial, the jury was instructed as to the requirements for it to find this

6   sentence enhancement true:

7          Someone *personally* uses a firearm if he displays the firearm in a menacing manner.
       [¶]  A *firearm* is any device designed to be used as a weapon, from which a projectile
8       is discharged or expelled through a barrel by the use of an explosion or other form
       of combustion.  [¶]  A firearm need not be in working order if it was designed to
9       shoot and appears capable of shooting.

10  CT 117 (italics in source).

11         Taylor's challenge to the sufficiency of the evidence appears to focus more on whether there

12  was evidence to support the sentence enhancement for personal use of a firearm rather than that the

13  evidence was insufficient to support the determination that he was the person who robbed the 7-

14  Eleven.  Out of an abundance of caution, the court will examine both issues.

15         The evidence was sufficient to allow a rational jury to find that the robber of the 7-Eleven

16  personally used a firearm in the commission of that robbery.  The 7-Eleven store clerk's testimony

17  demonstrated that the robber had used a firearm during the commission of the robbery.  The clerk

18  testified that he first noticed the gun after his coworker put his hands up.  RT 100.  The clerk, who

19  had seen guns before, testified that the gun "looked like a real gun."  RT 101; *see also* RT 118 ("It

20  looks a real gun, sir.").  The clerk testified that the robber aimed the gun at the clerk's stomach area.

21  RT 101-02.  The clerk testified that, after seeing the situation, the coworker ran away back to the

22  store's freezer, RT 102-103.  The clerk was scared.  RT 103.  The clerk saw the gun in the robber's

23  hand for up to 5-6 seconds, and then moved away from the register.  RT 115-116.  At trial, the clerk

24  was shown surveillance video from the 7-Eleven (that he had not seen before), and confirmed that

25  one video showed the area where the gun was during the robbery.  RT 110-113.  The clerk was

26  unable to estimate the length of the barrel of the gun.  RT 121-122.

27         The 7-Eleven clerk's testimony that the robber pointed what looked like a real gun at his

28  stomach area during the robbery, confirmed by the video that showed the robber holding a gun,

United States District Court
Northern District of California

35

provided sufficient evidence to support the sentence enhancement for personal use of a firearm during the robbery of the 7-Eleven.  Viewing the evidence in the light most favorable to the prosecution to determine whether a rational trier of fact could have found the essential elements of the enhancement proven beyond a reasonable doubt, *see Jackson v. Virginia*, 443 U.S. at 319, this court concludes that a rational trier of fact could find the elements of the sentence enhancement for personal use of a firearm proven true beyond a reasonable doubt.[7]

Taylor argues vigorously that the gun found at LaCarl Dow's residence was not adequately connected to the 7-Eleven robbery.  This dispute seems rather beside the point, as there are more guns in the world besides the replica one used by Taylor in the Chevron robbery and the real one found at Dow's residence.  Taylor does not provide any legal authority to support the view that the actual gun must be produced at trial in order for the firearm sentence enhancement to apply.

The evidence also was sufficient to support the jury's determination that it was Taylor who robbed the 7-Eleven.  Although the clerk could not identify the robber, the police who had studied the videos of the robbery and had studied Taylor on other occasions testified that he was the robber depicted on the 7-Eleven surveillance tapes.  Detective Perry testified to the similarities between Taylor and the 7-Eleven robber:  the beanie with the distinctive snowflake pattern on which Taylor's DNA was found appeared the same as that worn by the 7-Eleven robber; the green or yellow gloves with black palms, the gray Nike shoes, and the black hoodie found in Taylor's car at the Chevron robbery scene looked the same as those worn by the 7-Eleven robber.  RT 246-248.  Detective Perry testified that *Dow* was excluded as the 7-Eleven robber because his height, weight and skin tone were dissimilar from those of the robber.  RT 274.  Sergeant Mason identified Taylor as the 7-Eleven robber based on his observations of Taylor during surveillance and the videos:  "[h]aving surveilled [Taylor], having watched the way he moved.  I've seen his face."  RT 425-26.

---

[7] During a hearing on motions *in limine* before the trial started, the trial court denied a motion to dismiss the firearm-use enhancement.  RT 3-4.  The trial court stated that the clerk's testimony at the preliminary hearing about the gun that was pointed at him was sufficient evidence for the court to find probable cause to believe that Taylor had personally used a firearm;  the trial court also acknowledged that the burden of proof the jury would use would be higher.  RT 3-4, 8.

United States District Court
Northern District of California

United States District Court
Northern District of California

1     Evidence regarding the gun found at Dow's residence provided further support for the jury's

2   finding that Taylor had used a firearm in the 7-Eleven robbery.  Sergeant Mason testified that the

3   replica gun that Taylor had at the Chevron robbery was not the gun depicted in the video of the 7-

4   Eleven robbery. RT 429-30. (This mattered because, had it been the same gun, the enhancement

5   would not have applied because the replica gun (which apparently was a BB gun) was not a

6   "firearm" under state law.) Testimony from several police personnel about their surveillance

7   activities connected Taylor to Dow and to Dow's residence, showing that he had opportunity to

8   access the gun.  The police followed Dow and Taylor, saw them together, saw them in cars moving

9   in tandem, saw them casing other businesses together, and (before the Chevron robbery) saw Taylor

10   and Dow return to Dow's residence together.  See RT 332-336, 339-347, 374-408.  Taylor was seen

11   at Dow's residence in the days immediately preceding the Chevron robbery.  RT 378, 386, 389-90,

12   397, 530.  Dow was waiting in the car as Taylor committed the Chevron robbery, further showing

13   the connection between the two men.  A rational jury reasonably could have viewed this evidence

14   that showed Taylor and Dow to be in a robbery joint venture and showed Taylor's earlier presence

15   in Dow's house where the gun was found to be circumstantial evidence to support a finding that

16   Taylor used the gun found later found in Dow's house, notwithstanding the absence of Taylor's

17   fingerprints or DNA on that gun.

18     Taylor argues that the trial judge "stated that the "firearm was factually unsupported.'"

19   Docket No. 37 at 22 (quoting CT 168).  He misrepresents the trial court's observation.  The trial

20   court stayed the sentence on the felon-in-possession charge, stating that "there were no facts that the

21   court heard during the trial that would indicate that Mr. Taylor had a gun *any time other than at the*

22   *time of the robbery of Mr. Venogopal Yara* [i.e., the 7-Eleven clerk]. . . .  [T]he gun wasn't found in

23   Mr. Taylor's car.  It was found in Mr. Dow's house.  So there is no evidence in the court's mind that

24   would support, factually support that Mr. Taylor had the gun *other than at the time of the robbery*

25   *of Venogopal Yara.*"  CT 168 (emphasis added).  Clearly the import of this statement, together with

26   the stay (rather than dismissal) of the felon-in-possession conviction, was that there was evidence

27   that Taylor had a gun when he robbed the 7-Eleven but there was not evidence that he possessed it

28   at another time.

1      Viewing the evidence in the light most favorable to the prosecution, this court concludes that

2   a "rational trier of fact could have found the essential elements of the crime" and enhancement

3   proven beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. at 319. Taylor is not entitled to

4   the writ on this claim.

5

6   F.      Ineffective Assistance Of Appellate Counsel Regarding Insufficient Evidence Claim

7      Taylor next contends that his appellate counsel provided ineffective assistance in that he

8   failed to present on appeal the insufficient evidence claim just discussed. Docket No. 19 at 21. This

9   appellate-IAC claim is procedurally defaulted along with the insufficient evidence claim, for the

10  reasons section E.1, above. The appellate-IAC claim was first raised in the same habeas petition

11  (along with the insufficient evidence claim) in the California Supreme Court that was denied as

12  successive and untimely – procedural bars that this court earlier determined are independent and

13  adequate. Taylor does not show cause and prejudice or a miscarriage of justice to overcome the

14  procedural default. The appellate-IAC claim thus is rejected as procedurally defaulted.

15     Even if the procedural default doctrine did not apply to bar consideration of the appellate-

16  IAC claim, that claim would be rejected on the merits. As explained earlier in Section D, appellate-

17  IAC claims arise under the Due Process Clause but are reviewed according to the familiar *Strickland*

18  standard that requires the petitioner to show both deficient performance and resulting prejudice. *See*

19  *Smith v. Robbins*, 528 U.S. at 285-86; *Moormann*, 628 F.3d at 1106.

20     Taylor fails to show that appellate counsel's failure to challenge the sufficiency of the

21  evidence to support his conviction for robbery of the 7-Eleven with use of a firearm amounted to

22  deficient performance or resulted in prejudice to him. As explained above in Section E.2, there was

23  sufficient evidence to support the jury's verdict and finding.

24     The law on challenges to sufficiency of the evidence is such that it is very difficult to prevail

25  on such a claim. Contrary to Taylor's apparent belief, a challenge to the sufficiency of the evidence

26  does not result in the reviewing court making the guilty/not guilty finding on a clean slate. The

27  petitioner must show that *no* rational jury could have found him guilty and found the enhancement

28  allegation true, and must do so with the evidence and inferences therefrom being viewed in the light

United States District Court
Northern District of California

38

1   most favorable to the prosecution.  These are very substantial hurdles to overcome, as any reasonable

2   appellate counsel would know.  Deciding not to present the challenge to the sufficiency of the

3   evidence here was the sort of weeding out of weaker issues is widely recognized as one of the

4   hallmarks of effective appellate advocacy.  *See Jones*, 463 U.S. at 751-52.  Taylor is not entitled to

5   the writ on this claim.

6

7   G.      Prosecutorial Misconduct Claim

8           Taylor asserts that the prosecutor engaged in misconduct by violating the trial judge's *in*

9   *limine* ruling that he was not to refer to the "green glove robberies."  Docket No. 19 at 22.

10          This claim is procedurally defaulted for the same reasons discussed above in Section E.1.

11  The prosecutorial misconduct claim was first asserted in the same petition that challenged the

12  sufficiency of the evidence and that was denied by the California Supreme Court as successive and

13  untimely, with citations to *Clark* and *Robbins*.  As explained in Section E.1, the *Clark* and *Robbins*

14  bars are both adequate and independent and therefore suffice to bar the federal court from hearing

15  the merits of the claim.  Finally, as with the sufficiency of the evidence claim, Taylor does not show

16  cause and prejudice or a miscarriage of justice that would permit this court to hear the procedurally

17  defaulted prosecutorial misconduct claim.  This court need not reach the merits of the procedurally

18  defaulted claim.

19

20  H.      Ineffective Assistance Of Appellate Counsel Regarding Prosecutorial Misconduct Claim

21          Taylor next contends that his appellate counsel provided ineffective assistance in that he

22  failed to present on appeal the prosecutorial misconduct claim.  Docket No. 19 at 23.  The appellate-

23  IAC claim is procedurally defaulted along with the prosecutorial misconduct claim, for the reasons

24  stated above in Section E.1.  The appellate-IAC claim was first raised in the same habeas petition

25  (along with the insufficient evidence) that the California Supreme Court denied as successive and

26  untimely.  Taylor does not show cause and prejudice or a miscarriage of justice to overcome the

27  procedural default.  The appellate-IAC claim thus is rejected as procedurally defaulted.

28          Even if the procedural default doctrine did not apply to bar consideration of the appellate-

United States District Court
Northern District of California

1    IAC claim, that claim would be rejected on the merits.  As explained above in Section D, appellate-

2    IAC claims arise under the Due Process Clause but are reviewed according to the familiar *Strickland*

3    standard that requires the petitioner to show both deficient performance and resulting prejudice.

4         Taylor fails to show that appellate counsel's failure to present a claim of prosecutorial

5    misconduct amounted to deficient performance or resulted in prejudice to him.  The record support

6    for the prosecutorial misconduct claim is extremely thin.  Defense counsel moved *in limine* to

7    exclude testimony "concerning the 'green glove task force' or the 'green glove robberies'" pursuant

8    to California Evidence Code § 352 to avoid jurors speculating about how many additional robberies

9    were committed.  CT 81-82.  The trial court heard argument, discussed the motion, and pondered

10   whether prospective jurors would need to be voir dired about the "green glove" robberies that had

11   been mentioned in the news.  *See* RT 13-18.  The trial court then put off deciding this motion *in*

12   *limine* until later.  *Id.* at 18, 19.  The trial court later returned to consideration of the matter and

13   discussed the evidence that led the police from Sekou Carson to LaCarl Dow, and then from Dow

14   to Taylor.  RT 50-51.  A ruling that was ambiguous in scope followed.  The trial court appeared to

15   indicate that it was permissible for evidence to be presented  that the police investigated multiple

16   robberies: "So. however, it seems to me that there – the [San Francisco] police being in San Leandro

17   on the day of the November 19th robbery, then trailing them around the 18th and 19th, is all tied in

18   which a connection they make between – I mean, it seems to me *that they get to say, hey, we're*

19   *police officers, we investigate robberies*, we investigated this guy Carson for a robbery, and through

20   that investigation we came up with the name.  That name linked to Dow, and so we started looking

21   at Dow.  It's just an investigative tool.  It's not – that, alone, in itself, is not necessarily – you know,

22   *I don't know how much beyond that we go.  We're investigating robberies*."  RT 51 (emphasis

23   added).  Even if the trial court ever prohibited the use of the phrases "green glove robberies" or

24   "green glove task force" – which Taylor has not shown actually occurred -- Taylor does not show

25   that the prosecutor elicited any such testimony.  There was testimony from a San Francisco police

26   sergeant that he investigated "series robberies," but Taylor does not show that the trial court

27   prohibited mention (a) of the phrase "series robberies," (b) that the police investigated robberies, or

28   (c) that the police were investigating multiple robberies.  Taylor's claim hinges upon the prosecutor

1   disobeying an *in limine* ruling that he does not show was made.  Taylor also argues that trial counsel

2   "contributed" to the prosecutorial misconduct by asking about other robberies connected to Taylor,

3   *see* Docket No. 19 at 23, but there was no prosecutorial misconduct to which to contribute.

4       It was not deficient performance for appellate counsel for forego presenting this weak claim

5   of prosecutorial misconduct on appeal, and no prejudice resulted.  Weeding out of weaker issues is

6   widely recognized as one of the hallmarks of effective appellate advocacy.  *See Jones*, 463 U.S. at

7   751-52.  Taylor is not entitled to the writ on this claim.

8

9   I.   Taylor's "Motion To Inform The Court"

10      After filing his traverse, Taylor filed a "motion to inform the court" that an article in the East

11  Bay Times on March 8, 2021 reported that the now-former prosecutor (Keydon Levy) who had

12  prosecuted Taylor's case had in another case sent to the trial court and defense counsel an email

13  impersonating his (Levy's) own wife and falsely reporting that Levy had been involved in a serious

14  car accident – all allegedly done to delay the start of a rape trial.  Docket No. 39.  (Levy apparently

15  left the prosecutor's office after the event but before the article.)  Taylor claims the information is

16  important because it shows "a person willing to go through extreme measures to obtain a

17  conviction."  *Id.* at 3.

18      Even assuming that the information could be put in proper form (instead of its present

19  hearsay form) and was true, information about an alleged event of misconduct that occurred several

20  years after Taylor's 2016 trial and that was completely unconnected to the misconduct alleged in

21  Taylor's case is not relevant to whether the prosecutor engaged in misconduct at Taylor's trial.  *See*

22  *generally Smith v. Phillips*, 455 U.S. 209, 219 (1982) ("the touchstone of due process analysis in

23  cases of alleged prosecutorial misconduct is the fairness of the trial, not the culpability of the

24  prosecutor").  The motion therefore is DENIED.  Docket No. 39.

25

26  J.   No Certificate Of Appealability

27      A certificate of appealability will not issue.  *See* 28 U.S.C. § 2253(c).  This is not a case in

28  which "jurists of reason would find it debatable whether the petition states a valid claim of the denial

United States District Court
Northern District of California

of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling."  *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

## CONCLUSION

For the foregoing reasons, the amended petition for writ of habeas corpus is DENIED.

Petitioner's "motion to inform the court" is DENIED.  Docket No. 39.

The clerk shall close the file.

**IT IS SO ORDERED**.

Dated: April 20, 2021

_____

SUSAN ILLSTON
United States District Judge